UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADGIA DIXON, individually
and on behalf of all other persons
similarly situated who were employed
by NBCUniversal Media LLC with
one of its affiliated cable tv stations,

                Plaintiffs,

    v.

NBCUNIVERSAL MEDIA LLC and
OXYGEN MEDIA LLC,

                Defendants.

12 Civ. 7646 (PAE)

**ECF Case**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

NBCUniversal Media LLC
Chelley E. Talbert
chelley.talbert@nbcuni.com
30 Rockefeller Plaza
New York, New York 10112-0002
Tel: 212.664.2527
Fax: 212.664.6572

*Attorneys for Defendants NBCUniversal Media LLC and Oxygen Media LLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 1

    A.  Dixon's NBCUniversal Employment ........................................................... 1

    B.  The Governing Arbitration Agreement .......................................................... 2

        1.  The Obligatory Nature of the Solutions Agreement ............................... 2

        2.  The Costs and Procedures of Arbitration .............................................. 3

    C.  Dixon's Agreement To Be Bound By The Solutions Agreement ...................... 4

    D.  Dixon's Instant Claims ............................................................................... 5

ARGUMENT .................................................................................................................... 6

I.   NBCUNIVERSAL'S MOTION MUST BE CONSIDERED WITH A HEALTHY
     REGARD FOR THE STRONG FEDERAL POLICY FAVORING ARBITRATION
     AGREEMENTS ......................................................................................................... 6

II.  THE COURT SHOULD COMPEL ARBITRATION OF DIXON'S CLAIMS. ...................... 7

    A.  Dixon Is Bound By The Solutions Agreement. .............................................. 8

    B.  Dixon's Claims Fall Within The Scope Of The Solutions Agreement. ............. 10

    C.  Dixon's FLSA Claims Are Subject To Individual Arbitration. ........................ 11

    D.  Dixon Cannot Establish That The Costs of Individual Arbitration Would
        Prevent Her From Vindicating Substantive FLSA Rights. .............................. 17

III. THE COURT SHOULD DISMISS THE COMPLAINT. ...................................................... 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adkins v. Labor Ready, Inc.,*
   303 F.3d 496 (4th Cir. 2002) ................................................14

*Arciniaga v. Gen. Motors Corp.,*
   460 F.3d 231 (2d Cir. 2006) ..............................................6, 14

*Arrigo v. Blue Fish Commodities, Inc.,*
   704 F. Supp. 2d 299 (S.D.N.Y. 2010) ........................14, 15, 19

*AT&T Mobility v. Concepcion,*
   131 S. Ct. 1740 (2011) ..............................................6, 11, 15

*BedRoc Ltd. v. U.S.,*
   541 U.S. 176 (2004) ..........................................................14

*Bird v. Shearson Lehman/Am. Exp., Inc.,*
   926 F.2d 116 (2d Cir. 1991) ..................................................7

*Bottini v. Lewis & Judge Co.,*
   211 A.D.2d 1006, 621 N.Y.S.2d 753 (3d Dep't. 1995) ..............8

*Brown v. Coca-Cola Enter., Inc.,*
   No. 08-cv-3231(JFB)(ETB), 2009 WL 1146441 (E.D.N.Y. Apr. 28, 2009) ............9

*Caley v. Gulfstream Aerospace Corp.,*
   428 F.3d 1359 (11th Cir. 2005) ............................................14

*Carter v. Countrywide Credit Indus., Inc.,*
   362 F.3d 294 (5th Cir. 2004) ....................................14, 16, 17

*Ciago v. Ameriquest Mortg. Co.,*
   295 F. Supp. 2d 324 (S.D.N.Y. 2003) ..................................15

*Cohen v. UBS Fin. Servs., Inc.,*
   No. 12-cv-2147(BSJ)(JLC), 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) ............11, 14, 15

*Compucredit Corp. v. Greenwood,*
   132 S. Ct. 665 (2012) ..................................6, 7, 12, 13, 14, 15

*Crewe v. Rich Dad Educ., LLC,*
   ---F. Supp. 2d ---, No. 11-cv-8301(PAE), 2012 WL 3240185 (S.D.N.Y. Aug. 3, 2012) ........11

*David Threlkeld & Co. v. Metallgesellschaft Ltd.,*
   923 F.2d 245 (2d Cir. 1991) ..............................................8, 10

ii

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)............................................................................7

*Dobrova v. Holder*,
    607 F.3d 297 (2d Cir. 2010)...........................................................14

*Drakeford v. Washington Mut.*,
    No. 07-cv-3489(GBD), 2008 WL 2755838 (S.D.N.Y. July 11, 2008)..................19

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)...........................................6, 7, 8, 10, 12

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)..............................................................12, 15, 16

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*,
    848 F. Supp. 2d 410 (S.D.N.Y. 2012).............................................8, 10

*Gonzalez v. Toscorp Inc.*,
    No. 97-cv-8158(LAP), 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999) ...................10

*Green Tree Fin. Corp.-Ala. v. Randolf*,
    531 U.S. 79 (2000) ("*Green Tree*") ...........................................15, 17, 18

*Guyden v. Aetna Inc.*,
    544 F.3d 376 (2d Cir. 2008)..............................................................6

*Hoffman-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989).....................................................................14, 15

*Horenstein v. Mortg. Mkt., Inc.*,
    9 F. App'x 618 (9th Cir. 2001) ........................................................14

*In re Am. Express Merchs.' Litig.*,
    667 F. 3d 204 (2d Cir. 2012)........................................................17, 18

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)..............................................................7

*Kowalewski* v. *Samandarov*,
    590 F. Supp. 2d 477 (S.D.N.Y. 2008)................................................19

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) ............................................................14

*Large v. Conseco Fin. Servicing Corp.*,
    292 F.3d 49 (1st Cir. 2002)............................................................18

*LaVoice v. UBS Fin. Servs., Inc.*,
No. 11-cv-2308(BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)............14, 15, 17, 18

*Livingston v. Assocs. Fin., Inc.*,
339 F.3d 553 (7th Cir. 2003) ................................................................................18

*Long John Silver's Rest., Inc. v. Cole*,
514 F.3d 345 (4th Cir. 2008) ................................................................................13

*Louis Dreyfus Negcoe S.A. v. Blystad Shipping & Trading Inc.*,
252 F.3d 218 (2d Cir. 2001)..................................................................................10

*Manigault v. Macy's East LLC*,
318 F. App'x 6 (2d Cir. 2009) ..............................................................................8, 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*,
903 F.2d 109 (2d Cir. 1990)..................................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
473 U.S. 614 (1985).........................................................................7, 10, 12, 15

*Molina v. Coca-Cola Enter., Inc.*,
No. 08–CV–6370(MAT), 2009 WL 1606433 (W.D.N.Y. June 8, 2009)............................8, 9

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)......................................................................6, 7, 10, 12, 17

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)..................................................................................13

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998)....................................................................................7

*Orman v. Citigroup, Inc.*,
11-cv-7086(DAB), 2012 WL 4039850 (S.D.N.Y. Sept. 12, 2012) ........................................11

*Owen v. Bristol Care, Inc.*,
702 F.3d 1050 (8th Cir. 2013) ..............................................................................14, 16

*Paramedics Electromedicina Commercial, Ltda. v. GEMed. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)..................................................................................10

*Perry v. Thomas*,
482 U.S. 483 (1987)............................................................................................7

*Pomposi v. Gamestop, Inc.*,
No. 3:09-cv-340(VLB), 2010 WL 147196 (D. Conn. Jan. 11, 2010)......................................15

iv

*Raniere v. Citigroup Inc.*,
   827 F. Supp. 2d 294 (S.D.N.Y. 2011)......................................................................15

*Reid v. Supershuttle Int'l., Inc.*,
   No. 08-CV-4854(JG)(VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ..........................15

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974).............................................................................................7

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011)..................................................................................13

*Shearson/Am. Express v. McMahon*,
   482 U.S. 220 (1987)...................................................................................7, 12, 15

*Spencer-Franklin v. Citigroup/Citibank N.A.*,
   06-cv-3475, 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007) ....................................................19

*Torres v. United Healthcare Servs., Inc.*,
   ---F. Supp. 2d---, No. 12-CV-923(DRH)(ARL),
   2013 WL 387922 (E.D.N.Y. Feb. 1, 2013).........................................................14, 15, 17, 18

*Vilches v. Travelers Cos.*,
   413 F. App'x 487 (3d Cir. 2011) .............................................................................14

*Waldman v. Englishtown Sportswear, Ltd.*,
   92 A.D.2d 833, 460 N.Y.S.2d 552 (1st Dep't. 1983) ................................................................9

**STATUTES**

FED. R. CIV. P 12(b)(1), (6) ....................................................................................1

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA")........................................ *passim*

9 U.S.C. § 2 ..........................................................................................................6

9 U.S.C. § 3 ........................................................................................................19

9 U.S.C. § 4 ..........................................................................................................7

29 U.S.C. § 216(b) ................................................................................12, 13, 15, 16

29 U.S.C. § 626(b) ..............................................................................................16

New York Labor Law ("NYLL") ........................................................1, 5, 11, 17

Defendants NBCUniversal Media LLC ("NBCUniversal Media") and Oxygen Media LLC (individually, "Oxygen," collectively with NBCUniversal Media, "NBCUniversal" or "the Company"), respectfully submit this Memorandum of Law in support of their motion to compel arbitration and dismiss the complaint, or, in the alternative, to compel arbitration and stay proceedings, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and 9 U.S.C. § 1 *et seq.*,

## INTRODUCTION

Plaintiff Nadgia Dixon ("Dixon"), a current Production Coordinator at Oxygen (a subsidiary of NBCUniversal Media), presumptively asserts in this Court broad wage-and-hour claims arising out of and relating to her NBCUniversal employment.  She asserts such claims under the New York Labor Law ("NYLL") and the federal Fair Labor Standards Act ("FLSA"), both individually and on behalf of putative class and collective members, respectively.

Dixon's Complaint fails to disclose to the Court, however, that the terms of her employment require arbitration as the sole forum for determining her claims on an individual, non-class, non-collective basis.  Therefore, the claims Dixon asserts in her Complaint cannot proceed before this Court.  The Court should dismiss them and order that they be brought individually in arbitration.

## FACTUAL BACKGROUND

**A.    Dixon's NBCUniversal Employment**

Dixon was employed at Oxygen commencing in February 2006, initially as a Department Assistant, and, in or about October 2006, as an exempt Production Coordinator.  (Complaint ("Compl.") ¶¶ 5, 9; Declaration of Chelley E. Talbert ("Talbert Decl.") ¶ 3.)  When Oxygen was acquired by NBCUniversal Media in the fall of 2007 ("the 2007 Acquisition"), Dixon continued her employment and thereafter became a non-exempt Production Coordinator at NBCUniversal,

as she continues to be today.  (Talbert Decl. ¶ 3; *see* Compl. ¶¶ 5, 6.)

**B.    The Governing Arbitration Agreement**

As an NBCUniversal employee, Dixon's employment became governed by the Company's existing alternative dispute resolution ("ADR") program, and, on July 1, 2009, by its current ADR program, *Solutions*.  (Talbert Decl. ¶¶ 4-7; *see* Compl. ¶ 6.)[1]  *Solutions* encompasses a mandatory "agreement to arbitrate pursuant to the Federal Arbitration Act" (hereinafter, the "Solutions Agreement" or "Agreement").  (Talbert Decl. Ex. A at p. 2, § II.A.)

1.    The Obligatory Nature of the Solutions Agreement

The Solutions Agreement "creates a binding obligation on Covered Employees and the Company for the resolution of employment disputes."  (*Id.*)  Agreement Section II.M, titled "Exclusivity of Arbitration for Covered Claims; Injunctive Relief, Individual Nature of Covered Claims," requires that all "Covered Claims" asserted by "Covered Employees" be adjudicated in individual arbitration, not in a court of law:

> ***Covered Employees and the Company are not allowed to litigate a Covered Claim in any court***…Covered Employees and the Company waive their right to bring any Covered Claims as, or against, a representative or member of a class or collective action (whether opt-in or opt-out) or in a private attorney general capacity, unless all parties agree to do so in writing. ***All Covered Claims must be brought on an individual basis only in Solutions.***

(*Id.* at p. 7, § II.M) (emphasis added.)  The Agreement defines:

- Covered Claims as "all claims that arise out of or are related to an employee's employment," including, specifically, "[c]laims ***relating to compensation***"; and

---

[1] The *Solutions* program is a "structured dispute resolution procedure" comprising "two internal levels of review followed by, if necessary and applicable, outside mediation (Level III) and arbitration (Level IV).…If there is no resolution at Level III and the party wishes to pursue the concern, the next step is Level IV arbitration."  (Talbert Decl. Ex. A at p. 2, § II.A.)  It provides that "[a]ll concerns/claims shall be processed under the terms of the [ADR] program in effect at the time the concern/claim is first submitted to the program," and that covered disputes will be submitted to arbitration within thirty days of a determination (by a party or the mediator) that mediation was unable to resolve the dispute.  (*Id.* at p. 3, § II.D, p. 16, § III.D.2.)

- Covered Employees as "U.S.-based (or U.S. expatriates working outside the [U.S.]) current, or former employees who left the Company after the effective date of Solutions, not represented by a labor union who are or were employed by the Company."[2]

(*Id.* at p. 5, § II.F (emphasis added).) The Agreement also makes clear that "[n]othing in this procedure is intended to discourage or interfere with the parties...taking advantage of their rights to file administrative claims or charges with government agencies or authorities." (*Id.* at p. 4, § II.I.)[3]

      2.    The Costs and Procedures of Arbitration

Under the Solutions Agreement, any arbitration is to be conducted by a nationally recognized dispute resolution organization ("DRO"), and ***NBCUniversal*** will pay for: (1) the DRO filing and administrative fees, the arbitrator's fees and travel and living expenses, and the costs of the arbitration room; and (2) all currently employed parties and witnesses for all necessary time spent at the arbitration (by continuing the regular salary of exempt employees or paying the regular hourly rate of non-exempt employees during such time). (Talbert Decl. Ex. A at pp. 2-3, § II.A, p. 23, § II.D.4.)

Agreement Section III.D, entitled "Procedure and Responsibility," "Level IV – Arbitration," provides that the arbitrator "shall decide all Covered Claims ***in accordance with the substantive law*** of the state or the federal circuit, or both, in which the claim arose," and "***may grant any remedy or relief that would have been available had the claim been asserted in***

---

      [2] That former employees continue to be bound by the Solutions Agreement also is expressed clearly elsewhere in the Agreement: "Covered Employees continue to be obligated to use Solutions (including Level IV [i.e., mandatory arbitration] following the termination of their employment with respect to any and all Covered Claims they may have." (Talbert Decl. Ex. A at p. 4, § II.F.)

      [3] The Agreement provides the following examples of where employees may file claims: "the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), the Office of Federal Contact Compliance Programs (www.dol.gov/esa/ofccp), and any law enforcement authorities." (Talbert Decl. Ex. A at p. 4, § II.I.)

*court*," including "*experts' and/or attorneys' fees to* a 'prevailing party' under applicable law." (Talbert Decl. Ex. A at pp. 22-23, § III.D.18, 19, 22.)  In addition, the Agreement provides that "[b]oth parties have the opportunity to be represented by an attorney, to make opening statements, to present the testimony of witnesses and to introduce exhibits through witnesses, to cross-examine the other party's witnesses and to make closing statements," and it sets forth "certain guidelines on discovery and witnesses," which

> will apply unless the arbitrator determines that they will prevent the party from obtaining information and/or presenting evidence that will assist the party in proving a claim or defense, in which case *the arbitrator shall have the authority to make reasonable alterations to such guidelines*.

(*Id.* at p. 16, § III.D.1 (emphasis added).)[4]

## C.    Dixon's Agreement To Be Bound By The Solutions Agreement

In advance of implementing the Solutions program and its provisions requiring individual arbitration of all employment-related disputes, on April 29, 2009, NBCUniversal transmitted an announcement email to all NBCUniversal employees, including Dixon, at each of their respective individual NBCUniversal email addresses.  (Talbert Decl. ¶ 6, Ex. B.)  This announcement notified Dixon and all other recipients that "a change to [the] existing alternative dispute resolution program" was "being adopted across GE[5] as the standard method for resolving employment-related disputes."  (*Id.* Ex. B)  It further explained that "[b]y using mediation and arbitration, employees and employers can resolve disputes without the time and expense typical

---

[4] The guidelines provide further that:  a "neutral" arbitrator will be selected who "shall hold an initial conference with the parties to discuss…a plan for discovery," and who "shall have the authority to order such discovery, by way of a deposition, interrogatory, document production, requests for admission or otherwise, as the arbitrator considers necessary for a full and fair exploration of the issues in disputes consistent with the expedited nature of arbitration." (Talbert Decl. Ex. A at pp. 17-18, § III.D.7; *see also id.* at pp. 18-20, § III.D.8-19.)

[5] At the time of the announcement, General Electric Company owned a majority stake in NBCUniversal.  (Talbert Decl. ¶ 7.)

of court proceedings." (*Id.*)  The announcement instructed employees to complete an electronic

course on the Solutions ADR program by June 30, 2009.  (*Id.*)

The Solutions electronic training was a multipage PowerPoint presentation that provided

clear and unmistakable notice to Dixon and all other employees that:

- "[E]mployees will [ ] be required to bring claims to binding arbitration rather than to court";
- "**[B]y choosing to continue to work for the Company after July 1, 2009, you are agreeing to be covered by Solutions after July 1, 2009**";
- "Employees <u>and</u> the Company must use Solutions for all Covered Claims";
- "All Covered Claims that advance to Level IV must be brought to arbitration, they <u>cannot be brought to court</u> and will not be heard by a jury"; and
- Covered Claims can only be pursued on an individual basis through Solutions, <u>meaning that no class or collective actions are permitted</u>.

(Talbert Decl. Ex. C at pp. 4, 6, 7 (emphases in original).)  Dixon completed the Solutions

electronic training course on July 1, 2009.  (*Id.* Ex. D.)

## D.     Dixon's Instant Claims

On October 12, 2012, Dixon filed the instant action asserting claims against

NBCUniversal for alleged violations of the NYLL and FLSA.  (Compl. ¶¶ 1, 9.)  Dixon's

Complaint advances two distinct theories under which she allegedly was denied overtime pay:

(1) that before the 2007 Acquisition, Oxygen allegedly misclassified her Production Assistant

position as overtime-exempt; and (2) that after the 2007 Acquisition, while she was a non-

exempt Production Assistant, Company policies allegedly have discouraged overtime payment

for work performed after-hours on Company-issued Blackberries.  (*Id.* ¶¶ 9, 11-12.)

At no time has Dixon submitted any dispute related to the claims asserted in the

Complaint either to mediation or arbitration under the Solutions Agreement.  (Talbert Decl.

¶ 10.)  To the contrary, despite counsel for NBCUniversal providing to Dixon's counsel both a copy of the Solutions Agreement and notice of NBCUniversal's intent to file the instant motion, Dixon has refused to submit her claims to the Solutions ADR procedures on the grounds that the Solutions Agreement allegedly is unenforceable.  (*Id.* ¶¶ 11-12.)

## ARGUMENT

### I.

### NBCUNIVERSAL'S MOTION MUST BE CONSIDERED WITH A HEALTHY REGARD FOR THE STRONG FEDERAL POLICY FAVORING ARBITRATION AGREEMENTS.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), embodies a "liberal federal policy favoring arbitration agreements."  *Compucredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) ("*Compucredit*") (citing *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) ("*Concepcion*"); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("*Moses Cone*")).  Indeed, repeated decisions by the United States Supreme Court "place it beyond dispute that the FAA was designed to promote arbitration."  *Concepcion*, 131 S. Ct. at 1749.  The Second Circuit also has indicated that the strength of the federal policy in favor of arbitration is "difficult to overstate."  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006); *see also Guyden v. Aetna Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (noting the "the liberal federal policy favoring arbitration agreements" embodied in the FAA) (citation omitted); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) ("*Genesco*") (observing that the FAA "reflects a legislative recognition of the desirability of arbitration as an alternative to the complication of litigation") (quotation omitted).

FAA Section 2 provides that "[a] written provision…to settle by arbitration …*shall* be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  This provision consistently has been construed by courts as "a congressional declaration of a liberal federal policy favoring

arbitration agreements," *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (citing *Moses Cone*, 460 U.S. at 24), and that it "requires" that courts "rigorously enforce" arbitration agreements according to their terms. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("*Byrd*"); *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991).

Under these standards, the Court should enforce the Solutions Agreement and order arbitration of Dixon's claims according to the terms of that Agreement.

## II.

### THE COURT SHOULD COMPEL ARBITRATION OF DIXON'S CLAIMS.

FAA Section 4 directs that a district court "shall" order parties to proceed in arbitration where there has been a "failure, neglect, or refusal of another," here, by Dixon, to arbitrate under a written agreement.  9 U.S.C. § 4.  "These provisions are mandatory," and "'leave[] no place for the exercise of discretion by a district court.'"  *Genesco*, 815 F.2d at 844 (quoting *Byrd*, 470 U.S. at 218 (emphasis in original)), citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974).

The only factors to be considered by a court on a motion to compel arbitration under the FAA are:  (1) whether the party opposing arbitration is bound by an arbitration agreement; (2) whether that agreement covers the claims at issue; (3) if those claims are asserted under a federal statute, whether the FAA's mandate has been "'overridden by a contrary congressional command'"; and, if some but not all of the party's claims are covered by the arbitration agreement, whether to stay the balance of the proceedings pending arbitration. *See Compucredit*, 132 S. Ct. at 669 (quoting *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 227 (1987) ("*McMahon*")); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626-28 (1985) ("*Mitsubishi*"); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998).

Assessment of each of these factors dictates that the Court compel arbitration of all of Dixon's claims.

A.    **Dixon Is Bound By The Solutions Agreement.**

Dixon and NBCUniversal entered into a binding agreement to arbitrate all employment-related claims, including all the claims Dixon asserts here.  The Solution Agreement expressly prohibits Dixon from bringing those claims in this Court.  It mandates that instead, all such claims must be brought on an individual basis in arbitration.

New York courts apply generally accepted principles of state contract law when determining whether there is an agreement to arbitrate.  *See*, *e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 112 (2d Cir. 1990); *Genesco*, 815 F.2d at 844-45; *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 423-25 (S.D.N.Y. 2012) (Engelmayer, J.).  Consistent with the FAA, New York case law is clear that an employee is bound by an employer's arbitration policy even in the absence of a written agreement or acknowledgment by the employee of that policy.  *David Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991) ("*Threlkeld*") (rejecting employee's attempt to invalidate an arbitration agreement due to its not being backed by a writing signed by both parties, holding that the FAA requires no such signed writing and insofar as Vermont law purported to do so, it was preempted by the FAA); *see also Genesco*, 815 F.2d at 846 ("[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature.").

In the employment context, courts hold that an employee consents "'to a modification to the terms of employment'" – such as implementation of a mandatory arbitration agreement – "'by continuing to work after receiving notice of the modification.'"  *Molina v. Coca-Cola Enter., Inc.*, No. 08–CV–6370(MAT), 2009 WL 1606433, at *7 (W.D.N.Y. June 8, 2009) (quoting *Manigault v. Macy's East LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary

8

order)); *Bottini v. Lewis & Judge Co.,* 211 A.D.2d 1006, 621 N.Y.S.2d 753, 754 (3d Dep't.

1995); *Waldman v. Englishtown Sportswear, Ltd.,* 92 A.D.2d 833, 460 N.Y.S.2d 552, 555 (1st

Dep't. 1983)).

      Here, NBCUniversal notified Dixon on April 29, 2009 that, on a going-forward basis, her

employment would be covered by the Solutions Agreement.  NBCUniversal also specifically

advised Dixon that by continuing to work at NBCUniversal after July 1, 2009, she was agreeing

to be bound by the Solutions Agreement, including its requirement that she bring all claims

arising from or relating to her employment in an arbitral forum instead of in court, and that she

would not be permitted to assert any such claims on a class or collective basis.  After receiving

such notifications, Dixon continued her employment at NBCUniversal uninterrupted – as she

does to this day.

      This case thus falls squarely within the well-established body of case law holding that

employees' claims are covered by mandatory arbitration agreements.  As the Second Circuit held

in *Manigault,* for example, when affirming a district court's decision that an employee had

consented to arbitration by continuing employment after receiving notice of a dispute resolution

program, despite the absence of a signed agreement and despite the employee denying receipt of

the employer's mailing detailing the arbitration policy, "[a]lthough [Dixon] never signed any

formal document acknowledging that the implementation of" the 'Solutions' program would

preclude the filing of any future legal claims in this judicial forum, "[s]he received the multiple

notices supplying that information and continued with [her] employment," and "New York,

unlike other jurisdictions, has found that continued employment, without more, is sufficient to

manifest assent." *Manigault*, 318 F. App'x at 7-8; *Molina,* 2009 WL 1606433, at *7.  *See also*,

*e.g.*, *Brown v. Coca-Cola Enter., Inc.*, No. 08-cv-3231(JFB)(ETB), 2009 WL 1146441, at *6-8

(E.D.N.Y. Apr. 28, 2009) (granting motion to compel arbitration despite absence of a signed

9

arbitration agreement, reasoning that employee's continued employment after implementation of internal conflict resolution program constituted acceptance of its terms) (citation omitted); *Gonzalez v. Toscorp Inc.*, No. 97-cv-8158(LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999) (Preska, J.) (ruling that plaintiff was bound to "unsigned" arbitration policy in his employee handbook because he continued employment past its implementation date).

The Court should follow this authority and conclude that Dixon is bound by the terms of the Solutions Agreement.

**B.      Dixon's Claims Fall Within The Scope Of The Solutions Agreement.**

The Court also should determine that the Solutions Agreement covers the claims that Dixon asserts in her Complaint.

Once it has been established that an agreement to arbitrate exists, there is a "presumption" under the FAA that the agreement covers the claims at issue, which means that any "[d]oubts" as to whether an agreement covers the claim at issue "should be resolved in favor of coverage."  *Moses Cone*, 460 U.S. at 24-25; *Paramedics Electromedicina Commercial, Ltda.* v. *GEMed. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (citation omitted); *Louis Dreyfus Negcoe S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *Glencore*, 848 F. Supp. 2d at 421.  When determining if a particular claim falls within the scope of the parties' arbitration agreement, courts "focus on the factual allegations in the complaint rather than the legal causes of action asserted," and "[i]f the allegations underlying the claims 'touch on matters' covered by the parties' [arbitration] agreements, then those claims must be arbitrated, whatever the legal labels attached to them."  *Genesco*, 815 F.2d at 846 (citation omitted); *see also Mitsubishi*, 473 U.S. at 626 ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Threlkeld*, 923 F.2d at 250 ("Federal policy requires us to construe arbitration agreements as broadly as possible.") (internal

citation omitted).

Here, given the factual allegations in Dixon's Complaint and the law governing the Solutions Agreement, there can be no doubt but that the Agreement covers the claims Dixon purports to bring before this Court.  As a U.S. based, non-union, employee of NBCUniversal, Dixon irrefutably is a "Covered Employee" under the Agreement.  In addition, the factual allegations giving rise to Dixon's claims – that she was denied overtime pay because she initially was misclassified as exempt and later, when non-exempt, was unpaid for time after hours working on her Blackberry – indisputably constitute "claims relating to compensation" that "arise out of or are related to" employment and which are "Covered Claims" under the Solutions Agreement.  (Talbert Decl. Ex. A, at p. 5, § II.F.)

Simply put, Dixon's claims fall under the scope of the Solutions Agreement and therefore must be brought in arbitration, on an individual basis, not in this Court.

## C.    Dixon's FLSA Claims Are Subject to Individual Arbitration.[6]

That Dixon has "labeled" the factual allegations giving rise to her Complaint as "FLSA claims" and has styled her Complaint as a "collective action" does not change the Court's obligation to compel individual arbitration of Dixon's FLSA claims under the Solutions Agreement.

---

[6] Any contention by Dixon that her state law NYLL claims are not subject to mandatory individual arbitration is foreclosed by the Supreme Court's decision in *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) ("*Concepcion*"), and requires no further consideration by the Court.  *Cohen v. UBS Fin. Servs., Inc.*, No. 12-cv-2147(BSJ)(JLC), 2012 WL 6041634, at *5 (S.D.N.Y. Dec. 4, 2012); *Orman v. Citigroup, Inc.*, 11-cv-7086(DAB), 2012 WL 4039850, at * 3 (S.D.N.Y. Sept. 12, 2012); *see also Crewe v. Rich Dad Educ., LLC*, ---F. Supp. 2d ---, No. 11-cv-8301(PAE), 2012 WL 3240185, at *13 (S.D.N.Y. Aug. 3, 2012) (Engelmayer, J.) (noting that the Court was unaware of any case that had "declin[ed] to enforce an arbitration clause as a matter of federal law on the ground that the arbitral rules burden the plaintiff's ability to vindicate his or her state-law claims").

When a motion to compel implicates federal statutory claims, a district court must order arbitration of those claims unless the party opposing arbitration can prove that the "FAA's mandate has been 'overridden by a contrary congressional command'" that precludes waiver of a judicial forum in favor of individual arbitration. *Compucredit*, 132 S. Ct. at 669 (quoting *McMahon*, 482 U.S. at 227; *Mitsubishi*, 473 U.S. at 626-28).  If such a congressional intent to preclude individual arbitration of FLSA claims were to be found, it would be discoverable in the text of the statute, or, if such an intent is ambiguous from the statute, then from the its legislative history or some inherent conflict between its underlying purposes and arbitration.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Genesco*, 815 F.2d 849-50.  As the Supreme Court has instructed, moreover, "[t]hroughout" a court's evaluation of a plaintiff's assertion of a congressional intent to preclude arbitration, "it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Gilmer*, 500 U.S. at 26 (quotation omitted; citing *McMahon*, 482 U.S. at 227; *Mitsubishi*, 473 U.S. at 628; *Moses Cone*, 460 U.S. at 24).  In short, to escape an otherwise indicated Court Order that compels individual arbitration of the FLSA claims asserted here, Dixon must demonstrate that there was a congressional intent to make a specific exception for FLSA claims that precludes individuals from agreeing to waive the option of pursuing such claims on a collective basis in court, and that such congressional intent overrides the FAA's strong mandate in favor of arbitration.  This Dixon cannot do.

There simply is no such congressional intent.  The relevant portion of the FLSA statutory text, as amended in material part in 1947, reads:

> An action to recover…***may be*** maintained against an employer…in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing***

> *to become such a party and such consent is filed in the court in*
> *which such action is brought.*

29 U.S.C. § 216(b) (emphasis added). Plainly nothing in this text evinces any intent by Congress

to bar employees from agreeing to individually arbitrate their FLSA claims. Rather, the statute is

silent as to arbitration. Thus, as with the claims brought under the federal statute at issue in

*Compucredit*, 132 S. Ct. at 673, which, just like the FLSA was "silent on whether claims under

[it] can proceed in an arbitral forum," the FAA "requires" that an arbitration agreement covering

the allegations giving rise to the statutory claims "be enforced according to its terms."

   Indeed, this result is the only logical result, because a statute's providing a potential

plaintiff with the *option* to pursue her claims under a *procedural* collective action device in court

says nothing at all as to whether that plaintiff can elect to waive such a procedural option and

have her claims determined on an individual basis in arbitration. *See, e.g.*, *Compucredit*, 132 S.

Ct. at 673 (explaining that if Congress had intended to prohibit arbitration of the claims at issue,

it would have done so explicitly and citing examples of statutes in which Congress had done so

explicitly); *Long John Silver's Rest., Inc. v. Cole*, 514 F.3d 345, 350-51 (4th Cir. 2008)

(concluding that there was no conflict between an arbitration agreement that precluded judicial

collective actions and the substantive rights afforded by the FLSA, reasoning that the collective

action option was not a substantive right, but a procedural one that could be waived); *cf.*

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) (describing the

FLSA collective action option as a "procedural mechanism"); *Myers v. Hertz Corp.*, 624 F.3d

537, 542 (2d Cir. 2010) (drawing a distinction between the FLSA Section 216(b) collective

action provision and the "substantive provisions" of the FLSA). Therefore, just as in

*Compucredit*, based on the text of the FLSA, the only conclusion to be drawn is that "just as the

contemplated availability of all judicial forums may be reduced to a single forum by contractual

specification, so also can the contemplated availability of all judicial action be limited to judicial action compelling or reviewing initial arbitral adjudication." *Compucredit*, 132 S. Ct. at 671.[7]

Not surprisingly, *every Court of Appeals* and, it appears, *every district court in the Second Circuit*, save for one, have found no congressional intent to preclude individuals from agreeing to waive the judicial collective-action option and individually arbitrate their FLSA claims. *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013); *Vilches v. Travelers Cos.*, 413 F. App'x 487 (3d Cir. 2011); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002); *Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618 (9th Cir. 2001); *Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996); *Torres v. United Healthcare Servs., Inc.*, ---F. Supp. 2d---, No. 12CV923(DRH)(ARL), 2013 WL 387922 (E.D.N.Y. Feb. 1, 2013); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-cv-2147(BSJ)(JLC), 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) (Jones, J.); *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-cv-2308(BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) (Jones, J.); *Arrigo v. Blue Fish*

---

[7] The Court need not go any further in search for congressional intent to prohibit individual arbitration of FLSA claims than the statutory text itself (which lacks any indication of such an intent). *Arciniaga v. Gen. Motors Corp*, 460 F.3d 231, 236 (2d Cir. 2006) (holding that because no statutory provision limited parties' ability to agree to arbitral determination of claims, "we need not—and thus do not—consider the statutes' legislative history"); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, *and ends there as well if the text is unambiguous*.") (emphasis added; citation and quotation omitted); *accord Dobrova v. Holder,* 607 F.3d 297, 301 (2d Cir. 2010). Nor would the Court find any such congressional intent to preclude agreements requiring individual arbitration if it were to probe beyond the FLSA's text. To the contrary, if anything, the FLSA's legislative history suggests the *opposite* of any such intent. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (explaining that the "relevant amendment" to FLSA Section 216(b) in 1947 "was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013) (rejecting plaintiff's argument that a congressional intent to preclude waiver of judicial collective action rights could be found in the FLSA legislative history and ordering individual arbitration).

*Commodities, Inc.*, 704 F. Supp. 2d 299 (S.D.N.Y. 2010) (Marrero, J.); *Reid v. Supershuttle Int'l, Inc.*, No. 08-CV-4854(JG)(VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010); *Pomposi v. Gamestop, Inc.*, No. 3:09-cv-340(VLB), 2010 WL 147196 (D. Conn. Jan. 11, 2010); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003) (Conner, J.).[8]

Finally, the foregoing Circuit and district court case law is consistent with decades of Supreme Court precedent in which plaintiffs have been required to arbitrate their substantive claims under arbitration agreements – including in situations where mandatory arbitration meant that the plaintiffs would be unable to assert their claims on a class or collective action basis in a judicial forum. *See, e.g.*, *Concepcion*, 131 S. Ct. at 1749; *Green Tree Fin. Corp.-Alabama v. Randolf*, 531 U.S. 79, 90 (2000) ("*Green Tree*"); *Gilmer*, 500 U.S. 20; *see also Compucredit*, 132 S. Ct. at 669; *McMahon*, 482 U.S. at 227; *Mitsubishi*, 473 U.S. at 628.

---

[8] Dixon presumably will attempt to rely on the outlier case, *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 304 (S.D.N.Y. 2011) (Sweet, J.), in which the court held that the right to proceed collectively under the FLSA could not be waived. *Raniere*, however, is not binding on this Court, and it currently is on appeal to the Second Circuit (No. 11-5213). The holding in *Raniere* also was based exclusively on one Senator's remarks during the congressional debate on the *earlier* 1938 version of the FLSA – nine years *before* the 1947 enactment of the current FLSA § 216(b), the purpose of which was to *limit* the availability of representative actions. *Hoffman-La Roche Inc.*, 493 U.S. at 173. *Raniere* also contradicts the overwhelming weight of authority on this issue. NBCUniversal respectfully submits that the Court should reject the holding in *Raniere* and instead follow the analyses and conclusions in *Torres*, *Cohen*, *LaVoice*, *Reid*, *Pomposi*, *Ciago*, and *Arrigo*, as well as those in the decisions of every Circuit Court to have addressed the issue. As Senior District Court Judge Denis R. Hurley articulated in *Torres*, when expressly declining to follow *Raniere*, while the FLSA "does refer to the right of an employee to bring or join a collective action, the statute simultaneously describes the manner in which such right 'shall terminate.'… '[E]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well.'" *Torres v. United Healthcare Servs., Inc.*, ---F. Supp. 2d---, No. 12CV923(DRH)(ARL), 2013 WL 387922, at *5 (E.D.N.Y. Feb. 1, 2013) (citation omitted); *see also LaVoice v. UBS Fin. Servs., Inc.*, No. 11-cv-2308(NSJ)(JLC), 2012 WL 124590, at *6 (S.D.N.Y. Jan. 13, 2012) ("Given that the Supreme Court held in [*Concepcion*] that '[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA,' this Court must read [*Concepcion*] as standing against any argument that an absolute right to collective action is consistent with the FAA's 'overarching purpose.'") (citing *Concepcion*, 131 S. Ct. at 1748).

Significantly, the Supreme Court in *Gilmer* rejected an employee's challenge to the enforceability of an arbitration agreement with respect to his Age Discrimination in Employment Act ("ADEA") claims and ordered that those claims be determined in arbitration, not in court. *Gilmer*, 500 U.S. at 32-33.  ADEA claims are governed by ***the identical Section 216(b)*** ***collective action procedures that apply to Dixon's FLSA claims***.  29 U.S.C. § 626(b).  *See Carter*, 362 F.3d at 298 (rejecting plaintiffs' argument that their inability to proceed collectively deprived them of substantive FLSA rights, relying on *Gilmer*'s conclusion that ADEA claims must be arbitrated and the fact that "the provision for class actions in the ADEA *is* the FLSA class action provision") (emphasis in original).  Indeed, the *Gilmer* Court itself expressed that simply because that the ADEA "provides for the possibility of bringing a collective action does not mean that individual attempts [to vindicate claims in arbitration] were intended to be barred" by Congress, especially where – as is true under in the Solutions Agreement here – nothing in the arbitration agreement "preclude[d] the EEOC from bringing actions seeking class-wide and equitable relief." *Gilmer*, 500 U.S. at 32-33.  *See also Owen*, 702 F.3d at 1053-54 (rejecting employee's position that Congress intended to preclude waiver of judicial collective action rights, reasoning that, among other things, the governing arbitration agreement did not prevent the employee from filing a complaint with the DOL, EEOC, or NLRB, nor prevent those agencies from filing suit on behalf of a class of employees).

The Court should follow the reasoning and conclusions in all of the above cases and hold that Dixon's claims are subject to individual arbitration and cannot be determined in court or on a class or collective action basis.

**D.    Dixon Cannot Establish That The Costs of Individual Arbitration Would Prevent Her From Vindicating Substantive FLSA Rights.**

Finally, insofar as Dixon's refusal to arbitrate is based on the suggestion that individual arbitration costs would preclude her ability to vindicate FLSA rights, that too should fail.

When a party seeks to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.  *Green Tree*, 531 U.S. at 92; *In re Am. Express Merchs.' Litig.*, 667 F.3d 204, 212 (2d Cir. 2012) ("*Amex*"); *Torres*, 2013 WL 387922, at *7; *LaVoice*, 2012 WL 124590, at *6.  A court's consideration of such an argument by a party, moreover, must be conducted with a "healthy regard for the fact that the FAA 'is a congressional declaration of a liberal federal policy favoring arbitration agreements.'"  *Amex*, 667 F.3d at 219 (citing *Moses Cone*, 460 U.S. at 24).

Under the Solutions Agreement, *all* arbitration costs – including the tribunal filing and administrative fees, the arbitration room and arbitrator expenses, and all of Dixon's and any other current-employee witnesses she might call – are borne by NBCUniversal, not by Dixon. Additionally, the Agreement permits the arbitrator to award the prevailing party its costs – including experts' fees and attorneys' fees – and any other relief permitted by the FLSA (and NYLL).  Thus, Dixon could not show that the costs of individual arbitration would prevent her from vindicating the substantive rights afforded to her under the FLSA.

As the Fifth Circuit held in *Carter*, plaintiffs' argument that an arbitration agreement imposed excessive and prohibitive costs on them was untenable given the defendant's representation that it would pay all arbitration costs, which "mooted" any such argument and rendered it "impossible" for plaintiffs to carry their burden of proving that they were financially incapable of meeting individual arbitration costs.  *Carter*, 362 F.3d at 299-300.  *See also, e.g.,*

17

*Torres*, 2013 WL 387922, at *8 (pointing to fee shifting provisions in governing arbitration agreement and concluding that plaintiffs could not meet burden of proving that costs of individual FLSA arbitration would be prohibitively expensive); *LaVoice*, 2012 WL 124590, at *2, 6 (holding that plaintiff did not meet burden of showing likelihood of incurring prohibitively expensive costs and was required to arbitrate FLSA claims individually).  *Accord Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (reversing district court's denial of motion to compel and ordering plaintiffs to arbitrate their statutory claims, concluding that defendant's agreement to pay all costs associated with arbitration "foreclose[d] the possibility that the [plaintiffs] could endure any prohibitive costs in the arbitration process"); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002) (affirming district court's order that compelled arbitration and refused to permit plaintiffs to take discovery on the costs of arbitration, reasoning that it would not be "possible" for plaintiffs to show any prohibitive arbitration costs because defendant had agreed to pay all such costs, and the arbitration agreement afforded the arbitrator all powers provided by underlying law, including the power to award all legal and equitable remedies); *see also cf. Green Tree*, 531 U.S. at 92 (rejecting argument that arbitration agreement's silence regarding which party would bear costs and fees created an impermissible risk of plaintiff being required to bear prohibitive arbitration costs that would prevent her ability to vindicate statutory rights and ordering arbitration of her claims).[9]

---

[9] *In re Am. Express Merchs.' Litig.*, 667 F.3d 204, 212 (2d Cir. 2012) ("*Amex*"), does not support a different result.  That case involved the unique circumstances associated with antitrust claims, and its outcome was premised on the type of expert report necessary to show the existence of antitrust impact, which the plaintiffs' expert had opined could "easily exceed $1 million." *Amex*, at 66 F.3d at 212.  Given those factors, the court concluded that enforcing the arbitration provisions in the plaintiffs' individual credit card holder agreements "would grant Amex *de facto* immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recovery." *Id.* at 211-12.  Nothing remotely like those factors are, or could be, presented here.

The Court should follow the foregoing authority and hold that Dixon cannot prove that the costs of individual arbitration would prevent her vindication of FLSA substantive rights.

## III.

## THE COURT SHOULD DISMISS THE COMPLAINT.

Although the FAA directs the district court to enter a stay in a case where the asserted claims are "referable to arbitration," 9 U.S.C. § 3, "[w]here all of the issues raised in the Complaint must be submitted to arbitration," the Court may dismiss an action without prejudice, rather than ordering a stay of proceedings. *Arrigo*, 704 F. Supp. 2d at 304 (quotation omitted; citing cases and acknowledging that all courts of which it was aware had followed the rule); *see also Spencer-Franklin v. Citigroup/Citibank N.A.*, 06-cv-3475, 2007 WL 521295, at *4, 11 (S.D.N.Y. Feb. 21, 2007) (same); *Kowalewski* v. *Samandarov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (same); *Drakeford v. Washington Mut.*, No. 07-cv-3489(GBD), 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008) ("where no useful purpose will be served by granting a stay the action should be dismissed'") (internal quotations omitted).

Accordingly, where, as here, all of the claims that Dixon asserts in her Complaint must be submitted to arbitration, the Court should dismiss Dixon's Complaint without prejudice.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should compel arbitration and dismiss Dixon's complaint or, in the alternative, compel arbitration and issue a stay of proceedings.

NBCUNIVERSAL MEDIA LLC

By: *s/Chelley E. Talbert*
    Chelley E. Talbert (CT-3773)

30 Rockefeller Plaza
New York, NY 10112
(212) 644-2527

*Attorney for Defendants NBCUniversal Media LLC and Oxygen Media LLC*