UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADGIA DIXON, individually
and on behalf of all other persons
similarly situated who were employed
by NBCUniversal Media LLC with
one of its affiliated cable tv stations,

                              Plaintiffs,

        v.

NBCUNIVERSAL MEDIA LLC and
OXYGEN MEDIA LLC,

                              Defendants.

12 Civ. 7646 (PAE)

**ECF Case**

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
(1) CONDITIONAL CERTIFICATION UNDER THE FLSA, (2) COURT
FACILITATED NOTICE TO SIMILARLY SITUATED EMPLOYEES,
<u>AND (3) EXPEDITED DISCLOSURE OF CONTACT INFORMATION</u>**

Dated:  April 15, 2013

NBCUNIVERSAL MEDIA LLC

Chelley E. Talbert (CT-7208)
30 Rockefeller Plaza
New York, NY 10112
(212) 644-2527

*Attorney for Defendants NBCUniversal Media
LLC and Oxygen Media LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

ARGUMENT ................................................................................................................................ 4

I.  THE COURT SHOULD DENY DIXON'S MOTION BECAUSE SHE
    FAILS TO PROVIDE SUFFICIENT EVIDENCE TO SATISFY HER
    SIMILARLY SITUATED BURDEN UNDER SECOND CIRCUIT LAW........................ 4

    A.  The Legal Standard ....................................................................................................... 4

    B.  Dixon's Misclassification Claim is Untimely Under The FLSA And Thus
        Cannot Provide A Basis For Her Motion Under FLSA § 216(b). ................................. 6

    C.  Dixon Has Failed To Make The Required Factual Showing For
        Certification Or Notice On Her Off-The-Clock Overtime Claim. ................................ 7

II. ANY NOTICE SHOULD ISSUE ONLY TO PRODUCTION COORDINATORS
    EMPLOYED BY NBCU WHO HAVE FLSA CLAIMS THAT MIGHT BE TIMELY....14

CONCLUSION.............................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. IBM Rests. Inc.*,
  839 F. Supp. 2d 580 (E.D.N.Y. 2012) ................................................................. 15

*Amador v. Morgan Stanley & Co., Inc.*,
  No. 11Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ............................... 12

*Armstrong v. Weichert Realtors*,
  No. 05 Civ. 3120, 2006 WL 1455781 (D.N.J. May 19, 2006) .............................. 12

*Avila v. Northport Car Wash, Inc.*,
  774 F. Supp. 2d 450 (E.D.N.Y. 2011) ................................................................. 12

*Barfield v. N.Y. City Health & Hosps. Corp.*,
  No. 05 Civ. 6319, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ......................... 11

*Brickey v. Dolgencorp*,
  272 F.R.D. 344 (W.D.N.Y. 2011) ......................................................................... 11

*Cano v. Four M Food Corp.*,
  No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ........................... 12

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426 (2013) .......................................................................................... 14

*Diaz v. Elecs. Boutique of Am., Inc.*,
  No. 04 Civ. 0840F, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ................... 7, 12

*Eng-Hatcher v. Sprint Nextel Corp.*,
  No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ............. 10, 11, 12

*Flores v. Osaka Health Spa, Inc.*,
  No. 05 Civ. 962, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ............................. 12

*Foster v. The Food Emporium*,
  No. 99 Civ. 3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) ......................... 14

*Gonzalez v. El Acqjutla Rest. Inc.*,
  No. 08 Civ. 1513, 2007 WL 869583 (E.D.N.Y. Mar. 20, 2007) ............................. 6

*Guillen v. Marshalls of MA, Inc.*,
  841 F. Supp. 2d 797 (S.D.N.Y. 2012) ................................................................... 5

*Guillen v. Marshalls of MA, Inc.*,
  No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012 ....................................4, 5, 11

*Hamadou v. Hess*,
  No. 12 Civ. 0250, 2013 WL 164009 (S.D.N.Y. Jan. 16, 2013) ............................................12

*Harkins v. Riverboat Servs., Inc.*,
  385 F.3d 1099 (7th Cir. 2004) ...........................................................................................6

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*,
  No. 12 Civ. 265(PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012) ...................................13

*Khan v. Airport Mgmt. Servs., LLC*,
  No. 10 Civ. 7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011)...................................11, 12

*Laroque v. Domino's Pizza*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................................................................15

*Legrand v. Educ. Mgmt. Corp*,
  No. 03 Civ. 9798, 2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004)...........................................14

*Levinson v. Primedia*,
  No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)..........................................12

*Lujan v. Cabana Mgmt., Inc.*,
  No. 10 Civ. 755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011).................................................15

*Lynch v. United Servs. Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................................................................13

*Madero v. Trattoria La Regina, Inc.*,
  789 F. Supp. 2d 401 (E.D.N.Y. 2011) ................................................................................15

*Manning v. Gold Belt Falcon, LLC*,
  817 F. Supp. 2d 451 (D.N.J. 2011).......................................................................................6

*McBeth v. Gabrielli Truck Sales, Ltd.*,
  768 F. Supp. 2d 396 (E.D.N.Y. 2011) ................................................................................15

*Mendez v. The Radec Corp.*,
  260 F.R.D. 38 (W.D.N.Y. 2009) ...........................................................................................6

*Mendoza v. Casa De Cambio Delgado, Inc.*,
  No. 09 Civ. 2579, 2008 WL 3399067 (S.D.N.Y. Apr. 7, 2008) ............................................11

*Mitchell v. King Packing Co.*,
  350 U.S. 260 (1956) ............................................................................................................9

*Monger v. Cactus Salon & Spa's LLC*,
   No. 08 Civ. 1817, 2009 WL 1916386 (E.D.N.Y. July 6, 2009)............................................15

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011).......................................4, 5

*Pefanis v. Westway Diner, Inc.*,
   No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y. Oct. 8, 2008) ............................13

*Perkins v. S. New England Tel., Co.*,
   No. 07 Civ. 9675, 2009 WL 3754097 (D. Conn. Nov. 2, 2009) ...........................................6

*Prizmic v. Armour, Inc.*,
   No. 05 Civ. 2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ......................................5, 12

*Reich v. N.Y. City Transit Auth.*,
   45 F.3d 646 (2d Cir. 1995) ....................................................................................................9

*Roach v. T. L. Cannon Corp.*,
   2013 U.S. Dist LEXIS 45373 (N.D.N.Y. Mar. 29, 2013) .....................................................14

*Romero v. H.B. Auto. Grp., Inc.*,
   No. 11 Civ. 386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ..............................................11

*Seever v. Carrols Corp.*,
   528 F. Supp. 2d 159 (W.D.N.Y. 2007)..................................................................................12

*Singh v. City of N.Y.*,
   524 F.3d 361 (2d Cir. 2008) ...................................................................................................9

*Sobczak v. AWL Indus., Inc.*,
   540 F. Supp. 2d 354 (E.D.N.Y. 2007) ..................................................................................15

*Suarez v. S&A Painting & Renovation Corp.*,
   No. 08 Civ. 2984, 2008 U.S. Dist. LEXIS 95184 (E.D.N.Y. Nov. 21, 2008).........................6

*Summa v. Hofstra Univ.*,
   No. 07 Civ. 3307, 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008).........................................15

*Vasquez v. Vitamin Shoppe Indus., Inc.*,
   No. 10 Civ. 8820, 2011 WL 2693712 (S.D.N.Y. July 11, 2011) ......................................4, 11

*Williams v. Securitas Sec. Servs. USA, Inc.*,
   No. 10 Civ. 7181, 2011 WL 3629023 (E.D. Pa. Aug. 17, 2011) ...........................................9

*Zavala v. Wal-mart Stores Inc.*,
   691 F.3d 527 (3d Cir. 2012) ...................................................................................................5

*Zivali v. AT&T Mobility, LLC,*
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ...................................................................................7

**STATUTES**

29 U.S.C. § 255 .....................................................................................................................6

29 U.S.C. § 216(b)........................................................................................................1, 3, 4, 6

**OTHER AUTHORITIES**

Rule 23.................................................................................................................................1, 14

Rule 23(b)(3) ........................................................................................................................14

Rule 30(b)(6) ........................................................................................................................13

## PRELIMINARY STATEMENT

The Court should deny Plaintiff Nadgia Dixon's motion for "conditional certification" of this case as a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and for an order directing notice to putative collective class members.  Dixon has not proffered any facts to demonstrate, even on a preliminary basis, that she is "similarly situated" to other production coordinators of Defendant Oxygen Media LLC ("Oxygen"), much less to any employees of the other NBCUniversal Media LLC ("NBCUniversal Media") cable subsidiaries whom she seeks to include in this action.

At the outset, we note (as does Dixon in her moving papers) that the instant motion for conditional certification and notice applies only to Dixon's FLSA claim against Oxygen and NBCUniversal Media (collectively, "NBCUniversal," "Defendants" or "Company"), and not to her claim against them under the New York Labor Law ("NYLL").  Dixon purports to bring the latter as a putative Rule 23 class action, and no motion for certification of a Rule 23 class has been made.

This distinction is significant because Dixon's claims fall into two broad categories:  (i) a claim that she and others were misclassified as exempt from the requirement to pay overtime prior to NBCUniversal Media's 2007 acquisition of Oxygen; and (ii) a claim that she and other non-exempt employees were denied overtime pay for work attributable to off-duty blackberry usage from 2009 to the present.  As discussed in Point I(B), below, Dixon's misclassification claim is time barred under the FLSA's maximum three year statute of limitations.  That claim can be asserted only under the NYLL, not under the FLSA.  It thus provides no basis for certification of an FLSA collective action or notice to putative FLSA class members or disclosure of their names.

At the heart of Dixon's conditional certification and notice motion is her assertion that she is similarly situated to certain other non-exempt "production coordinators and similarly situated employees" at Oxygen (a group she refers to as a "subclass") and at other NBCU cable subsidiaries (a group she refers to as the "class"). (Pl. Br. 1, 7)[1]  The gist of Dixon's complaint (and of her supporting declaration) is that she effectively has been precluded from recording overtime incurred by her off-duty blackberry usage because "the overtime policy requirements of NBCU discourage me and based on my information and belief other similarly situated production coordinators from submitting overtime for blackberry work."  (Dixon ¶ 5 (emphasis added))

Based only on her own declaration – consisting largely of conclusory assertions concerning the experience of other employees that are not based on personal knowledge – Dixon asks the Court to order notice not only to other production coordinators at Oxygen, but to all other "similar" non-exempt employees of other NBCUniversal cable subsidiaries (companies for whom Dixon has never worked) who have been issued blackberries.

As we discuss in Point I(C), below, Dixon has not come close to meeting the standard for initial certification and notice.  In fact, the breadth of Dixon's request stands in stark contrast to the paucity of evidence she offers to support it.  She offers no evidence concerning the positions held or work performed by employees of other NBCUniversal companies; indeed, she fails even to offer evidence concerning the positions and work of her fellow employees of Oxygen.  Rather, she simply lumps together every employee of multiple subsidiaries who carries a blackberry and

---

[1]The brief and declaration in support of the instant motion by Plaintiff Nadgia Dixon are cited, respectively, "Pl. Br. _" and "Dixon ¶ _/Ex. _."  The accompanying declaration of Chelley E. Talbert, Esq., dated April 15, 2013, is cited "Talbert ¶ _/Ex. _," and her Feb. 19, 2013 declaration (Dkt. No. 9) is cited "CT-2.19-13 ¶ _/Ex. _."

asserts that together they have all been wronged by an NBCUniversal policy that is perfectly lawful on its face.

Finally, as we show in Point II, even if there were a basis to order notice and preliminary certification, the scope of the discovery Dixon seeks in order to provide "class notice" is overbroad.  At most, notice would be appropriate only to present and former Oxygen production coordinators employed within the last three years preceding the mailing of notice.

## FACTUAL BACKGROUND

The complaint alleges that Dixon commenced employment at Oxygen in February 2006 as a non-exempt Department Assistant, and, in approximately October 2006, became an exempt "production coordinator" there.  (Compl. ¶¶ 5, 9; CT-2.19.13, ¶ 3)  When NBCUniversal Media acquired Oxygen in the fall of 2007, Dixon continued her employment and, as of March 31, 2008, became a non-exempt production coordinator at NBCUniversal.  (Talbert ¶ 3; CT-2.19.13 ¶ 3; *see* Compl. ¶¶ 5, 6)

According to Dixon, since she started as a production coordinator at Oxygen, her "job responsibilities have included scheduling engineers, voice talent, and producers for the Oxygen cable channel," and those "responsibilities have not materially changed" through to the present. (Dixon ¶ 2)  She provides no further information as to her actual responsibilities while a production coordinator at NBCUniversal.

Dixon has now filed a motion for conditional collective action certification under Section 16(b) of the FLSA.  Dixon describes her proposed class as individuals who:

> are presently or were formerly employed in production coordinator and
> other related positions [at Oxygen and other cable television
> subsidiaries] in New York City, other than executive personnel,
> [during] the period of three years prior to the filing of the complaint in
> this action, [and who] were not paid overtime compensation for work
> done on company issued Blackberries in violation of the FLSA.

3

Pl. Br. 1-2, 8; Dixon ¶ 6; Compl. ¶¶ 1, 9.  Dixon estimates that her proposed class includes "hundreds" of individuals, potentially "exceeding one thousand" in total.  (Compl. ¶ 9)

## ARGUMENT

**I.      THE COURT SHOULD DENY DIXON'S MOTION BECAUSE SHE FAILS TO PROVIDE SUFFICIENT EVIDENCE TO SATISFY HER SIMILARLY SITUATED BURDEN UNDER SECOND CIRCUIT LAW.**

As detailed below, Dixon has presented woefully insufficient evidence to support certification of any class, much less the expansive one she proposes.

### A.      The Legal Standard

The Court may facilitate notice to other potential opt-in plaintiffs only if it determines that Dixon has demonstrated she is "similarly situated" to those potential opt-in plaintiffs.  29 U.S.C. § 216(b).  In the Second Circuit, certification of an action under Section 16(b) typically proceeds in two stages – initially, upon a named plaintiff's preliminary motion for "conditional" (a/k/a "first-stage" or "initial") certification, and, if that motion is granted, again at the conclusion of discovery, upon a defendant's motion to decertify the action before trial.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011).

On a first-stage motion, as here, a district court must determine whether the named plaintiff has made "a 'modest factual showing' sufficient to demonstrate that [she and other proposed class members] together were victims of a common policy or plan that violated the law."  *Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575, 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) ("*Guillen II*") (Preska, J.) (emphasis added) (quoting *Myers*, 624 F.3d at 555).  A court's determination on this issue, moreover, cannot be "automatic."  *Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (Swain, J.) (emphasis added).  Rather, it is only *if* the court concludes – based on a review of the pleadings, affidavits, and other materials on file – that the plaintiff has, *in fact*, met her similarly

situated burden, that it may "'facilitat[e] notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in." *Myers*, 624 F.3d at 554-55 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Although a plaintiff's burden at the initial certification stage is "modest," it is "not non-existent." *Guillen II*, 2012 WL 2588771, at *2 (emphasis added; quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)). The Second Circuit has made clear that a plaintiff cannot satisfy her burden with "unsupported assertions," such as through her counsel's argumentative assertions in an unverified complaint or legal brief. *Myers*, 624 F.3d at 555; *see Zavala v. Wal-mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

Instead, a plaintiff only can satisfy her burden if she offers "actual evidence" sufficient to demonstrate that she and other class members are similarly situated in respects material to the plaintiff's "allegation that the law has been violated." *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 800-01 (S.D.N.Y. 2012) ("*Guillen I*") (Gorenstein, MJ) (emphasis added; quotation omitted), *adopted in full*, *Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ("*Guillen II*") (Preska, J.); *Prizmic v. Armour, Inc.*, No. 05 Civ. 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006); *accord Zavala*, 691 F.3d at 536. This means that the plaintiff must demonstrate a "factual nexus" between her claim and those of the putative class members where such "nexus" is "'tied'" to, and likely to facilitate common proof concerning, the plaintiff's particular theory of FLSA liability. *Guillen I*, 841 F. Supp. 2d at 800-01 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); *accord Zavala*, 691 F.3d at 538.

Under these standards, Dixon plainly has not met her burden, and her motion should be denied in its entirety.

**B.**     **Dixon's Misclassification Claim is Untimely Under The FLSA And**
           **Thus Cannot Provide A Basis For Her Motion Under FLSA § 216(b).**

Dixon's motion refers to her "misclassification claim for the time period before Oxygen was owned by NBCU."  Pl. Br. 1.  Her motion also refers, correctly, to the fact that her FLSA claim is subject to a maximum statute of limitations of three years (in the event of a "willful" violation).  (Pl. Br. 2; 29 U.S.C. § 255)  But insofar as Dixon suggests that the three year statute of limitations runs from "the period of three years prior to the filing of this Complaint," (Pl. Br. 2) she is incorrect.  In a putative collective action under Section 16(b), the statute of limitations is not tolled unless and until there is a consent form filed by each named and opt-in plaintiff who seeks to participate in the action.[2]

Here, Dixon does not (as she cannot), allege that she was misclassified as exempt within the FLSA limitations period.  Rather, she asserts that "[w]hen NBC took over Oxygen, the production coordinators were re-classified as hourly employees who were entitled to overtime

---

[2] Courts have held that the requirement to file a consent form applies to the named plaintiff as well as to opt-in plaintiffs who consent to join the case after the filing of a complaint. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004); *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 52 (W.D.N.Y. 2009); *Suarez v. S&A Painting & Renovation Corp.*, No. 08 Civ. 2984, 2008 U.S. Dist. LEXIS 95184, at *2 n.1 (E.D.N.Y. Nov. 21, 2008) (citations omitted); *Gonzalez v. El Acqjutla Rest. Inc.*, No. 08 Civ. 1513, 2007 WL 869583, at *5 (E.D.N.Y. Mar. 20, 2007).  "Although it may seem curious that this consent requirement would apply to a named plaintiff, this requirement has been held to apply even to the named plaintiffs…"  *Mendez*, 260 F.R.D. at 52 (citation omitted).

Some courts have held that the requirement is fulfilled if/when a named plaintiff files a sworn declaration or affidavit that constitutes the functional equivalent of a consent form.  *See, e.g.*, *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d 451, 453-54 (D.N.J. 2011); *but see Perkins v. S. New England Tel., Co.*, No. 07 Civ. 9675, 2009 WL 3754097, at *3 n. 2 (D. Conn. Nov. 2, 2009) (holding that named plaintiff had not sufficiently consented to become a party plaintiff despite her submitting a declaration in support of class certification because nothing in her declaration specifically showed a "desire to take part in this action as a plaintiff").

Here, although the action was commenced on October 12, 2012, Dixon to this date has not filed a consent to join form; her first sworn statement submitted in the case was filed March 18, 2013, in opposition to Defendants' motion to compel arbitration.  In any event, Dixon's misclassification claim would be untimely even measuring the statute of limitations from the date of the filing of the complaint.

even though their job function remained essentially the same."  Compl. ¶ 22.  NBCUniversal Media purchased Oxygen in November 2007, and Dixon was classified as non-exempt effective March 31, 2008.  Talbert ¶ 3.  As Dixon's FLSA misclassification claim is untimely, such claim obviously cannot provide a basis to allow Dixon to maintain this action as a collective action, or to obtain Court-authorized notice to others who may have likewise been misclassified outside the limitations period.

### C.  Dixon Has Failed To Make The Required Factual Showing For Certification Or Notice On Her Off-The-Clock Overtime Claim.

Dixon's factual "showing" as to her off-the-clock, blackberry work claim does not even come close to that necessary to satisfy her ambitious request for FLSA certification, discovery and notice.  The material elements of Dixon's declaration amount to the following:

- a quote from language in an NBCUniversal policy requiring approval for overtime work, (Dixon ¶ 4);

- an assertion that she responds to work-related emails outside her regular work day and that she <u>believes</u> other unidentified production coordinators do so as well (Dixon ¶ 5); and

- an assertion that there have been "many hundreds of individuals employed as production coordinators by the cable stations owned by NBCU who all work in Manhattan, New York." (Dixon ¶ 6)

That is not enough.

The policy Dixon references – requiring overtime approval – is entirely lawful.  *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 462 n.3 (S.D.N.Y. 2011) (Rakoff, J.) (citing *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008)); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04 Civ. 0840F, 2005 WL 2654270 at *4 (W.D.N.Y. Oct. 17, 2005).  Nothing in the language

of the policy itself discourages the reporting of overtime hours worked.  *See* Talbert Ex. A.

Contrary to the assertion in Dixon's memorandum, moreover, nothing in the policy mandates

that "overtime work needed prior approval or it would not be paid."  Pl. Br. 7.  To the contrary,

the policy requires that non-exempt employees "submit their <u>actual</u> overtime hours worked," and

it prohibits such employees from incurring work time that is not submitted for payment.  Talbert

Ex. A (emphasis added).

Dixon also has not made any evidentiary showing that the lawful NBCUniversal policy

has been applied to her in an unlawful manner, much less that there is a common unlawful policy

applicable to the diverse group of others at Oxygen and NBCUniversal's other cable subsidiaries

– subsidiaries that Dixon's declaration does not even identify other than by a generic reference to

"other cable stations owned by NBCU."  (Dixon ¶ 5)

Dixon's declaration is in fact more notable for what it omits than for what it contains:

• She avers that "[i]n order to adequately perform the functions of my job it is necessary

for me to reply to work emails on my company blackberry when I am not in the office."  (Dixon

¶ 5)  But she offers no explanation for this conclusory assertion.  Nor is one apparent from

Dixon's one sentence description of her job responsibilities ("…my job responsibilities have

included scheduling engineers, voice talent, and producers for the Oxygen cable channel").

(Dixon ¶ 2)

• Dixon avers that her normal work hours are "ten to six" and that "[d]uring a typical day I

respond to work emails form [*sic*] eight to ten and from six to ten.  There are times when I am

responding to work emails late into the night."  (Dixon ¶ 5)  She offers no detail, however, as to:

how many days she works per week; whether she takes meal or other breaks during her alleged

10-6 regular work day (in which case her normal work day would be less than eight hours and

her normal work week would be less than forty hours based on a five day work week); or

8

whether or how often she performs continuous work, as opposed to sporadic, "*de minimis*" tasks, during the hours referred to in her declaration.[3]

• Dixon's declaration is silent concerning the critical assertion in her memorandum of law that NBCUniversal's lawful overtime policy "had the practical effect of denying overtime compensation for work performed on company issued Blackberries." (Pl. Br. 7)  Dixon's declaration merely states that she and others are not "routinely paid for time spent working on" blackberries. (Dixon ¶ 5)  She provides no explanation as to what "routinely" means, and she offers no explanation for her conclusory claim that "the overtime policy requirements of NBCU discourage me…from submitting overtime for blackberry work." (*Id.*)  She certainly does not allege she submitted overtime that was denied because she did not comply with the overtime policy.

• While the details offered by Dixon as to her own claims are, at best, bare bones, she offers even less with respect to other putative class members.  She merely asserts that "based on [her] observations," she "believe[s] that other production coordinators perform work on their company issued blackberries in a similar manner to the work I perform on my company blackberry." (Dixon ¶ 5 (emphasis added))  But she does not identify anyone by name, subsidiary, work location, or even description of such other person's job responsibilities.  She also does not purport to explain how such other persons have been discouraged from reporting

---

[3] Work performed beyond an employee's regularly scheduled shift (like that alleged by Dixon here) is compensable only if it is an "integral part of and indispensable" to the proper and efficient performance of a plaintiff's position and more than "*de minimis*" in nature.  *Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956); *Singh v. City of N.Y.*, 524 F.3d 361, 371 n.8 (2d Cir. 2008); *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 652 (2d Cir. 1995).  Conditional certification is inappropriate where the named plaintiff fails to offer sufficient proof that any uncompensated overtime work was more than *de minimis* in nature.  *See Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10 Civ. 7181, 2011 WL 3629023 (E.D. Pa. Aug. 17, 2011) (denying conditional certification on off-the-clock claims because, *inter alia*, named plaintiffs had not offered evidence that their alleged unpaid activities were more than *de minimis* in nature).

overtime – either by virtue of NBCUniversal's policy or by virtue of any action by their supervisors.  Her declaration is equally silent as to whether such persons failed to receive overtime pay for work performed on a blackberry.  She does not even state whether the persons she has "observed" report to her same supervisor, worked in the same location, or worked under the same senior management or HR leads (as she could not do, given that her proposed class extends across a dozen separately incorporated companies).  Dixon also does not provide any support for the assertion that she managed to "observe" other employees performing off-duty work on blackberries – a curious proposition given that the gist of her claim is that she and others have been required to perform work using blackberries when they are working remotely off-site.

• Finally, Dixon offers no facts concerning production coordinators at other cable subsidiaries to support her request that they all be treated as part of a single collective class represented by her – other than to assert that "there are many hundreds of individuals employed as production coordinators by the cable stations owned by NBCU who all work in Manhattan, New York."  (Dixon ¶ 6)  Dixon, who has never worked at any of those subsidiaries, offers nothing more than her "belief" about others, which she purports to premise on "discussions" (which she does not describe) that she allegedly had with others (whom she does not identify).  (*Id.* ¶¶ 5, 6)  Notably, those alleged discussions merely concerned whether those individuals performed work on a blackberry after work hours – *not* whether those individuals were discouraged by NBCUniversal's overtime policies from submitting that time or failed to receive overtime pay for that work.

Courts in similar cases have repeatedly rejected first-stage certification motions supported only by declarations made on information or belief, rather than on personal knowledge, or which contain conjecture or conclusory allegations based on anecdotal hearsay.

In *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383 at *3

(S.D.N.Y. Nov. 13, 2009) (Jones, J.), for example, the Court denied conditional certification where the named plaintiff asserted that retail consultants were routinely required to work off-the-clock by virtue of Sprint's policies designed to minimize overtime costs (which were lawful on their face). Judge Jones held that the assertion of a *de facto* company-wide policy applicable to the requested class found no support in the named plaintiff's own testimony, in which she identified other employees at only the store where she worked, but offered no details or "affidavits from any other employees" to corroborate her allegations. *Id.* at *3.

The court reached the same conclusion in *Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). There, the plaintiff's evidentiary proffer consisted only of "her discussion of her own situation," and "her statement that on 'knowledge and belief'" other putative class members were in her same situation – but no affidavits from any actual other proposed class members. Judge McMahon held that the plaintiff could not even satisfy the lenient standard for first-stage certification.

Other courts have routinely reached the same result and denied first-stage certification when presented with records as meager as the one here. *See, e.g.*, *Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (Swain, J.) (no certification where motion "based solely on [named plaintiff's] personal experience" because record was "devoid of any evidence from which this Court could infer that all" proposed class members had had same experience as plaintiff); *Barfield v. N.Y. City Health & Hosps. Corp.*, No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (Rakoff, J.) (same result on motion supported solely by named plaintiff's attesting she was denied overtime pay for off-the-clock work and that other class members told her they had been as well, because such "limited

11

anecdotal hearsay" was insufficient even to make a "modest factual showing").[4]

By contrast, the cases Dixon cites in her moving papers involved certification based on named plaintiffs' presentation of <u>multiple</u> declarations – often where other putative plaintiffs already had filed opt-in forms seeking to join the case.[5]  In *Amador v. Morgan Stanley & Co., Inc.*, No. 11 civ. 43262013 WL 494020, at *5 (S.D.N.Y. Feb. 7, 2013) (Pl. Br. 6), for example, the plaintiffs' certification motion was backed by <u>eleven</u> declarations (from three named plaintiffs, five opt-ins, and three other potential class members), which attested to personal observation or other first-hand knowledge about locations in nine states.  *Id.* at *7.  In addition, the *Amador* plaintiffs' declarations included evidence that managers knew class members had to work overtime in order to adequately perform their jobs but had <u>told them</u> not to record their

---

[4] *Accord Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) (Preska, J.); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371, at *4-5 (S.D.N.Y. Nov. 16, 2011) (Buchwald, J.); *Brickey v. Dolgencorp,* 272 F.R.D. 344, 348 (W.D.N.Y. 2011); *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 09 Civ. 2579, 2008 WL 3399067 (S.D.N.Y. Apr. 7, 2008) (Baer, J.); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 173-74 (W.D.N.Y. 2007); *Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006) (Fox, MJ); *Armstrong v. Weichert Realtors*, No. 05 Civ. 3120, 2006 WL 1455781 at *1 (D.N.J. May 19,  2006); *Levinson v. Primedia*, No. 02 Civ. 2222, 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) (Motley, J.); *Prizmic v. Armour, Inc.*, No. 05 Civ. 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04 Civ. 0840E, 2005 WL 2654270 at *4 (W.D.N.Y. Oct. 17, 2005).

[5] That there has been no participation by any other putative class members since the commencement of this action six months ago is itself telling.  *See Khan*, 2011 WL 5597371, at *5 (denying first-stage certification, noting that although not "determinative" in itself, the fact that the named plaintiff "ha[d] been unable to produce a single other individual interested in participating in th[e] case" in support of his motion was "telling"); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 730, 2009 WL 7311383, at *3 n.6 (S.D.N.Y. Nov. 13, 2009) (Jones, J.) (reaching same outcome and noting that while not "conclusive" alone, the absence of corroborating affidavits by other putative plaintiffs was "telling," particularly where plaintiff's motion came four months into discovery, during which time presumably she had tried to secure such affidavits).

overtime hours, <u>altered their time records</u>, and/or demanded that they do so, *Amador*, 2013 WL 494020, at *5 – facts not present here.[6]

The expansive nature of Dixon's request – to certify a class of what she characterizes as hundreds of employees (potentially exceeding 1,000) who have worked at a dozen different NBCUniversal subsidiaries, at an undisclosed number of locations, for an untold number of different supervisors and HR managers – makes this case fundamentally different from the handful of cases that have allowed preliminary certification based solely on the allegations of a single named plaintiff. Such cases involved certification of very small classes comprising employees <u>at a single location</u>, where the named plaintiff was in a position to attest that (s)he personally observed the conduct of which she complains.[7] Dixon's claim, which lies at the

---

[6] Dixon's other referenced cases are also inapposite. *See, e.g.*, *Hamadou v. Hess*, No. 12 Civ. 0250, 2013 WL 164009 (S.D.N.Y. Jan. 16, 2013) (five plaintiff-supplied declarations supported limited certification order of class comprising only two territories within one state about which plaintiff-declarants had provided personal knowledge); *Avila v. Northport Car Wash, Inc.*, 774 F. Supp. 2d 450 (E.D.N.Y. 2011) (seven plaintiffs <u>plus</u> eight opt-ins supported notice motion for 25 member class where defendant did not oppose motion); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) (sworn statements from five named and opt-in plaintiffs who <u>identified</u> dozens of other class members by name and <u>described</u> their actual conversations with them); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) (in a misclassification case, <u>nine</u> opt-ins filed consent forms, and supporting evidence included deposition testimony from four plaintiffs and admissions by defendant's Rule 30(b)(6) witness that class members performed substantially the same job duties).

[7] *See, e.g.*, *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265(PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012) (granting motion for notice by named plaintiff who only sought certification of servers who worked at the same New York City address, 152 W. 49th St., where three affiliated Japanese restaurants shared signage and <u>the same entrance</u>, among which servers were moved interchangeably, and the declarant-named plaintiff attested that she <u>personally observed</u> her co-workers being forced to work under the same sub-minimum wage, tip credit, and non-spread of hours pay policies); *see also, e.g.*, *Iriate v. Redwood Deli and Catering, Inc.*, No/ 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) (certification based on named plaintiff's reasonable observations of co-workers at deli during work day); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082, at *3-4 (S.D.N.Y. Oct. 8, 2008) (certification sought and granted only for named plaintiff's one work location).

opposite end of the spectrum from those cases seeking certification of a modestly sized class at one work site, should be denied.

## II.    ANY NOTICE SHOULD ISSUE ONLY TO PRODUCTION COORDINATORS EMPLOYED BY NBCU WHO HAVE FLSA CLAIMS THAT MIGHT BE TIMELY.

As discussed above, the Court should deny Dixon's motion for certification and notice. Should the Court grant the motion, however, the notice – and any discovery associated with it – should be limited in two key respects.

First, Dixon's request for Court-ordered notice to individuals employed within six years of the filing of the complaint should be denied.  As noted above, the FLSA statute of limitations is three years from the date of filing of a consent to join the action.

Dixon suggests that notice should issue to those time-barred claimants because they *might* have NYLL claims *if* the Court certifies such claims at some future date.[8]  (Pl. Br. 10) However, individuals who have no viable FLSA claim should not receive FLSA notice.  *See Legrand v. Educ. Mgmt. Corp*, No. 03 Civ. 9798, 2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004); *Foster v. The Food Emporium*, No. 99 Civ. 3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000). *Accord Kudo v. Panda Rest. Grp., Inc*., 09 CV-0712 (CS) (S.D.N.Y.) (in a hybrid FLSA/NYLL case, ordering production of contact information only for individuals employed during three year period prior to date of order authorizing notice, and further ordering that the notice, once approved, be sent only to putative class members employed during the three-year period prior to

---

[8]  Dixon's assertion that "this case presents a textbook case for eventual class certification under the NYLL" (Pl. Br., 10), involves a question not currently before the Court.  We note, however, that the U.S. Supreme Court has recently emphasized again that a Rule 23 class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) (citation omitted).  In doing so, the Court made clear that a class should not be certified under Rule 23(b)(3) where questions of individual damage calculations will inevitably overwhelm questions common to the class.  Slip. Op. at 7.  See *Roach v. T. L. Cannon Corp.,*2013 U.S. Dist LEXIS 45373 (N.D.N.Y. March 29, 2013) (citing *Comcast* in denying class certification of NYLL claims).

the notice mailing date) (citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011)).

We note that Dixon cites three decisions from the Eastern District of New York for the proposition that a six year notice period is appropriate.  That proposition, however, has not only been rejected in this District, but is the minority view even in the Eastern District.  In fact, Eastern District courts have noted that the <u>growing trend</u> among courts there is to <u>reject</u> notice periods beyond three years.  *See, e.g.*, *Alvarez v. IBM Rests. Inc.*, 839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012) (refusing six-year notice request).[9]  A three-year limitation is particularly appropriate here, given the cost and burden associated with identifying the former employees who would have to receive notice and the confusion that would ensue among those recipients themselves should they receive notice of a lawsuit that they would not be permitted to join because their claims would be untimely under the FLSA.

Finally, there would be no basis for extending the class of employees receiving notice to those outside the position of "production coordinator."  Without repeating the discussion above, Dixon has failed to identify any other person – by name, job title or duties and responsibilities – who is similarly situated to her.  Her request that notice be sent to "production coordinators and similarly situated employees" does nothing other than parrot the statutory language, while failing to offer any information or evidence by which defendants or the Court would be able to identify the individuals in such other positions or determine whether they are in fact similarly situated.

---

[9] *Accord Madero v. Trattoria La Regina, Inc.*, 789 F. Supp. 2d 401 (E.D.N.Y. 2011); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011); *Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755, 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011); *Monger v. Cactus Salon & Spa's LLC*, No. 08 Civ. 1817, 2009 WL 1916386 (E.D.N.Y. July 6, 2009); *Laroque v. Domino's Pizza*, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008); *Summa v. Hofstra Univ.*, No. 07 Civ. 3307, 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008); *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 34 (E.D.N.Y. 2007).

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny Dixon's motion in its entirety.  In the alternative, the Court should order that defendants provide identifying information only for individuals employed by Oxygen as production coordinators during the three year period preceding the entry of the Court's order and that notice be mailed only to individuals who were employed by Oxygen as production coordinators within three years of the notice mailing date.

Dated:  April 15, 2013                       NBCUNIVERSAL MEDIA LLC

By: s/*Chelley E. Talbert*
                       Chelley E. Talbert (CT-7208)

                       30 Rockefeller Plaza
                       New York, NY 10112
                       (212) 644-2527

                       *Attorney for Defendants NBCUniversal*
                       *Media LLC and Oxygen Media LLC*